UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.A. S.K., and L.M., on behalf of themselves and others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br>　vs.<br>KIRSTJEN NIELSEN, et al.,<br><br>　　　　　　　　　Defendants. | Civil Action No. 18-cv-09214 (ES)(CLW)<br><br>**OPINION & ORDER** |

## I.　INTRODUCTION

This matter comes before the Court on Defendants' letter brief asserting the deliberative process and law enforcement privileges over the named Plaintiffs' Parole Determination Worksheets, as defined in Section 6.2 of Ice Directive 11002.1. (Defendants' Letter Brief, ECF No. 25). For the reasons set forth below, the Defendants' application will be denied.

## II.　BACKGROUND

A.　*Procedural History*

This action involves claims under the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment against Secretary of Homeland Security Kirstjen Nielsen, Acting Director of U.S. Immigration and Customs Enforcement Thomas D. Homan, and other federal officials in their official capacities. Plaintiffs D.A., S.K., and L.M. seek declaratory and injunctive relief, on behalf themselves and a class of similarly situated individuals, all of whom are asylum seekers detained under the authority of the Newark Field Office of the United States Immigration and Customs Enforcement Agency ("ICE") pending the resolution of their asylum applications. (Compl. ¶¶ 1-2).

Plaintiffs allege that Defendants have adopted a "*de-facto* no-parole policy" for asylum applicants, under which applicants are automatically denied parole without any individualized assessments. (Id. ¶ 4). According to Plaintiffs, the blanket denial of parole to detainees seeking asylum contravenes the Immigration and Naturalization Act ("INA"), the Fifth Amendment of the United States Constitution, applicable regulations, and, of particular relevance for the instant letter application, ICE Directive 11002.1. (Id. ¶ 130).

On June 5, 2018, the Court, recognizing its obligation to establish subject matter jurisdiction over this case, issued an Order directing the parties to submit briefing on the Court's subject matter jurisdiction and to appear for oral argument on that issue. (ECF No. 19).

In connection with the Court's determination of subject matter jurisdiction, the Court ordered Defendants to produce four categories of discovery. The fourth category is at issue here. With respect to the named Plaintiffs only, Defendants were required to produce any worksheets as defined in Section 6.2 of ICE Directive 11.002.1 documenting Defendants' parole decision making process ("Parole Determination Worksheets") by June 18, 2018, or to submit a letter explaining Defendants' bases for withholding the Worksheets should Defendants attempt to do so. (Id. at 2).

Defendants elected to withhold the production of the Worksheets and filed a letter brief, consistent with the Court's Order, claiming the Worksheets were protected by the deliberative process privilege and the law enforcement privilege. (Def.'s Letter Br., ECF No. 25). On June 12, 2018, Plaintiffs filed an opposition letter, asserting that neither privilege shielded the Parole Determination Worksheets. (Pl.'s Opp., ECF No. 26). On June 18, 2018, Defendants submitted a reply letter, along with redacted Parole Determination Worksheets for the named Plaintiffs and the Declaration of Deputy Executive Associate Director for Enforcement and Removal Operations

2

Nathalie R. Asher. (Def.'s Reply, ECF No. 32). The Court held oral argument on June 19, 2018 and conducted an in-camera review of the three named Plaintiffs' completed Worksheets.

B.  *Parole Determination Worksheets*

ICE Directive 11002.1, titled "Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture" (hereinafter "Parole Directive"), was issued in December 2009 and took effect in January 2010. (Exh. A to Compl., ECF No. 3-2). The Parole Directive applies to arriving aliens who are subject to expedited removal proceedings under Section 235 of the INA and have made a preliminary demonstration of "credible fear" of persecution or torture to a UCSIS officer or an immigration judge. Parole Directive § 1.

The Court will briefly summarize the aspects of the detention and parole process that are relevant to the named Plaintiffs' detention and parole denials. If an arriving alien is found "to be inadmissible at the border," the alien is referred to the expedited removal process under Section 235 of the INA. (Transcript of Oral Argument at 18). These aliens may then pursue asylum, if they demonstrate to a UCSIS officer or an immigration judge that they have a credible fear of persecution or torture. (Transcript at 19); *see also* Parole Directive §§ 4.1-4.2. Aliens who establish a credible fear in the first instance are then detained pending further consideration of their asylum applications and the outcome of their deportation proceedings. Parole Directive § 4.2. These aliens may be paroled on a case-by-case basis. Id.

The Parole Directive sets out the parole factors that deportation officers must consider and the procedures that ICE must follow for determining if a detained asylum applicant will be granted parole. Id. §§ 1, 4.4. These factors include whether an alien can establish his or her identity, whether the alien is a flight risk, whether the alien is a danger to the community or to U.S. national

3

security, and any other "exceptional, overriding" factors. Id. § 8.3. The Parole Directive provides detailed guidance to deportation officers for how to analyze each of these four factors. Id.

A Detention and Removal Operations ("DRO") officer must "conduct an interview with the alien to assess his or her eligibility for parole" within seven days of a finding that the arriving alien has credible fear, "unless an additional reasonable period of time is necessary[.]" Id. § 8.2. Within that seven-day period, the Directive also requires the DRO Office to "complete the *Record of Determination/Parole Determination Worksheet* and submit it for supervisory review." Id. The Directive requires DRO Field Offices to use Parole Determination Worksheets to "uniformly document their parole decision-making processes." Id. § 6.2. Once the assigned DRO officer completes the Parole Determination Worksheet and makes a parole recommendation, the Worksheet passes through two levels of review. First, a supervising official must review the Worksheet and make an assessment regarding parole. Id. §§ 8.5-8.6. Then, the deciding official, who is either the Field Office Director, Deputy FOD, or Assistant FOD, makes a final conclusion on the parole application. Id. § 8.7. The Field Office must then provide a written indication of the parole decision to the alien, who may make a written request for a redetermination. Id. §§ 8.8-8.9.

Defendants seek to withhold unredacted Parole Determination Worksheets for the three named Plaintiffs, who are subject to the Parole Directive. Plaintiffs D.A., S.K., and L.M. were arriving aliens apprehended at an airport and subject to expedited removal proceedings for entering the United States for an immigrant purpose on a nonimmigrant visa. (Transcript at 19-20). After a preliminary finding of credible fear, Plaintiffs were detained at the Elizabeth Detention Facility pending the resolution of their asylum applications. (Id. at 4, 12). All three named Plaintiffs were denied parole because they failed to establish that they were not flight risks. (Id. at 16); *see also* (Declaration of Deputy Field Office Director Rueben Perez Jr., ECF No. 33, ¶¶ 23, 34, 46).

4

Plaintiffs received letters notifying them that their parole requests were denied. (ECF No. 33 ¶¶ 24, 36, 47).

III. **DISCUSSION**

Federal Rule of Civil Procedure 26(b)(1) provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Privilege claims that seek to exclude otherwise relevant materials are narrowly construed. United States v. Nixon, 418 U.S. 683, 710, 94 S. Ct. 3090, 3108, 41 L. Ed. 2d 1039 (1974). The party asserting the privilege bears the burden of establishing the privilege. G-69 v. Degnan, 130 F.R.D. 326, 331 (D.N.J. 1990).

Defendants assert that the deliberative process and the law enforcement privileges protect the unredacted Worksheets. To assert both privileges, the government must satisfy three procedural prerequisites. U.S. v. O'Neill, 619 F.2d 222 (3d Cir. 1980). Defendants have done so here. First, "the head of the department which has control over the matter" must make a "formal claim of privilege," after actually considering the privilege claim. Id. at 226 (quoting United States v. Reynolds, 345 U.S. 1, 7-8, 73 S. Ct. 528, 532, 97 L.Ed. 727 (1953)). Defendants have submitted a Declaration from Deputy Executive Associate Director for Enforcement and Removal Operations Nathalie R. Asher formally claiming the privileges. (ECF No. 32 at 5, ¶¶ 5, 7). Second, the claimant must provide "a specific designation and description" of the privileged documents. O'Neill, 619 F.2d at 226. The privilege claim here concerns three specific documents – the completed Parole Worksheets for the three named Plaintiffs. Finally, Defendants must articulate "precise and certain reasons" for maintaining the confidentiality of the documents. Id. Defendants did so both through their letter briefing and through Director Asher's declaration. (ECF No.32 at

5, ¶¶ 6-8). Therefore, the Court will proceed to analyzing the substance of Defendants' privilege claims.

   A. *Deliberative Process Privilege*

The deliberative process privilege protects "the decision making processes of government agencies" and, in particular, "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 150, 95 S. Ct. 1504, 1516, 44 L. Ed. 2d 29 (1975) (internal quotations omitted). The purpose of the privilege is to "prevent injury to the quality of agency decisions which could result from premature or indiscriminate disclosure" of such policy-making deliberations. Resident Advisory Board v. Rizzo, 97 F.R.D. 749, 751 (E.D.Pa. 1983). "The privilege recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would suffer.'" Delaware Riverkeeper Network v. Delaware River Basin Comm'n, 300 F.R.D. 207, 210 (D.N.J. 2014) (quoting First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 (D.C.Cir.1994)).

Defendants argue that the Parole Determination Worksheets are protected by the privilege because they memorialize the parole decision making process and agency officials' "preliminary opinions and evaluations" as to whether the Plaintiffs should be granted parole. (Def.'s Letter Br. at 2). Plaintiffs, on the other hand, submit that these Worksheets are merely routine forms that are used to implement existing parole guidance and thus are not the type of materials the privilege is designed to protect. (Pl.'s Opp. at 3).

The deliberative process privilege includes two components. "The government must…show that the material sought to be protected is pre-decisional and deliberative." Delaware

Riverkeeper Network, 300 F.R.D. at 211 (quoting Abdelfattah v. United States Dep't of Homeland Sec., 488 F. 3d 178, 183 (3d Cir. 2007)). The Court will analyze each component in turn.

**Pre-decisional Prong**

The privilege applies only to material created before a decision is reached, and "communications made after the decision and designed to explain it" are not protected. N. L. R. B., 421 U.S. at 152. In N. L.R.B., the Supreme Court held that memoranda that articulated the final binding decision of the N.L.R.B.'s General Counsel to dismiss a charge against an employer were not privileged. These memoranda "contain[ed] instructions for the final processing of the case," and thus "[d]isclosure of these memoranda would not intrude on predecisional processes." Id. at 155, 158.

Defendants argue that the Parole Determination Worksheets are predecisional because they are created in the course of a step-by-step parole review process and catalogue preliminary evaluations by the preparing officer and the supervising official, both of whom must make a nonbinding parole recommendation before the deciding official makes the final decision. (Def.'s Letter Br. at 2). According to Plaintiffs, these Worksheets are not pre-decisional, because the decision to grant or deny parole is not a policy decision. (Pl.'s Opp. at 3). Rather, by completing the Worksheets, agency officials are merely implementing the parole policy that has already been adopted through existing regulations and the 2009 Parole Directive. (Id.)

The pre-decisional prong asks only if the materials at issue were created before the agency made a decision. *See, e.g.,* Abdelfattah, 488 F. 3d at 183 (holding that an ICE draft incident report was pre-decisional because it "involved discussions between the agency's subordinates and seniors," and ICE did not adopt or incorporate the draft into its final decision). A deportation officer and supervisory official completed sections of the Worksheets before a final parole

7

determination was made by the deciding officer. Therefore, the Worksheets are pre-decisional, and the fact that agency officers follow existing guidelines to fill them out is of no import to this factor of the deliberative process analysis.

## Deliberative Prong

The privilege extends only to deliberative processes, and Defendants have failed to meet their burden of demonstrating that the Worksheets satisfy this factor of the deliberative process test. The privileged material must reflect the "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." N.L.R.B., 421 U.S. at 150. Thus, the privilege distinguishes between opinions, which are protected, and facts, which fall outside of the privilege. "Factual summaries," even if they are part of the decision-making process, are not protected. In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987) (quoting Paisley v. C.I.A., 712 F. 2d 686, 699 (D.C. Cir. 1983)). The Court conducted an in camera review of the completed Worksheets for the named Plaintiffs in order to evaluate the content of the Worksheets and determine if the Worksheets contain privileged information or unprotected factual material. *See* U.S. v. O'Neill 619 F. 2d at 231 (directing the District Court to conduct an in camera review of subpoenaed documents related to the Philadelphia Police Department's response to allegations of police brutality to "ascertain whether [the materials] contain primarily factual data.").

Defendants argue that the Parole Determination Worksheets are deliberative because deportation officers use their discretion to weigh a wide range of factors and make a judgment call about parole. Thus, according to Defendants, these Worksheets capture the "mental processes" and "thoughts" of agency officials on "complex and delicate topics" such as a detainee's danger to the community or national security. (Def.'s Letter Br. at 2). Plaintiffs refute this characterization of

the Worksheets. According to Plaintiffs, by filling out the Worksheets, officials are merely filling in factual information in a routine manner, rather than deliberating about policy. (Pl.'s Opp. at 3).

The Court finds that Defendants have not met their burden of demonstrating that the Worksheets are deliberative. The Worksheet mostly contains a series of "yes or no" factual questions about the detailed parole factors in the Parole Directive, as well as questions that prompt the preparing official to write comments based on their analysis of the parole factors. In U.S. v. Ernstoff, the court found that similar forms were factual in nature and thus not privileged. 183 F.R.D. 148 (D.N.J 1998). Ernstoff concerned test file review forms and summary memoranda of HUD's discrimination testing in rental markets. The forms and memoranda "contained nothing but descriptions as to what was said and done under the testing," and did "not include opinions or evaluations of the testers." Id. at 153. On the Parole Determination Worksheets, the "yes" or "no" questions about an individual's language ability, identity documentation, and ties to the community are clearly factual. With respect to the preparing and reviewing officers' written answers, the Court has reviewed the Worksheets in camera and determined that these comments are brief factual conclusions. Accordingly, none of the redacted answers on the Worksheet constitute privileged opinion material.

The Court recognizes that deportation officers exercise discretion in making parole decisions. *See* Parole Directive § 4.4 ("Parole remains an inherently discretionary determination entrusted to the agency; this directive serves to guide the exercise of that discretion."). However, this discretion does not automatically render parole determinations "deliberative" within the meaning of the privilege. Courts in this District have been reluctant to classify discretionary lower-level decision-making as the type of policy deliberation protected by the privilege, and the Court shares this reluctance. The privilege would be sweep too broadly if it covered "communications

9

that might contribute to the formulation of any decision by a public official." Reid v. Cumberland Cty., 34 F.Supp. 3d 396, 407 (D.N.J. 2013). In Reid, the Court rejected a deliberative process privilege claim for, *inter alia*, excessive force files, personnel files, and use of force reports relevant to a Section 1983 excessive force claim. Id. Applying the Third Circuit's definition of a deliberative process as "confidential deliberations of *law* and *policymaking*," the Court concluded that the privilege "should be limited to communications designed to contribute, directly, to the formulation of important public policy." Id. (relying on Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 854 (3d Cir. 1995)) (emphasis in original). In this case, the Parole Determination Worksheets, which document the routine application of the parole factors in Section 8.3 of the Directive to individual cases, fall on the unprivileged side of the distinction between policymaking deliberations and formulaic decision making based on existing guidelines.

**Balancing Test**

The deliberative process privilege is not absolute. Once the privilege is established, the Court must weigh "the benefit of preserving the integrity of internal governmental deliberations against the need for free and open discovery." Ernstoff, 183 F.R.D. at 152 (internal citations omitted). Even if Defendants had met their burden of establishing the privilege, disclosure of the Worksheets would still be appropriate. The relevant factors include: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation, and (v) the possibility of future timidity by government employees." Redland Soccer Club, Inc. 55 F.3d at 854 (internal citations omitted). These factors weigh in favor of the disclosure of the completed Worksheets with at Attorneys' Eyes Only restriction, to balance Plaintiffs' needs with the government's interest in confidentiality.

10

Plaintiffs have demonstrated a strong need for the Parole Worksheets, which are relevant to the heart of their claim that Defendants "fai[l]…to provide individualized custody reviews to determine whether [asylum applicants'] incarceration is justified" and thus exercise a "*de facto* no-parole policy." (Compl. ¶¶ 3, 4). Defendants contest the unredacted Worksheets' relevance. According to Defendants, the redacted Worksheets are sufficient to determine whether an individualized review of the parole applications took place. (Transcript at 36). The added value of the unredacted Worksheets, Defendants contend, would be nothing more than "getting to the merits of the [parole] determination," which is not the question before this Court. (Id.)

Defendants' evaluation of the unredacted Worksheets' relevance is unnecessarily cramped and restrictive, particularly in light of the broad relevance standard under Fed. R. Civ. P. 26. Defendants have redacted the preparing officers' answers and comments, as well as the preparing officers' and supervising officials' parole recommendations and the bases for those recommendations. In the redacted version, Plaintiffs only have access to the final parole decision and the Foreign Language information for the applicant. This information does not shed light on whether Defendants undertook an individualized review process – it reveals only that a final parole decision was ultimately made.

Plaintiffs' need for the unredacted Worksheets is particularly acute given the absence of other materials that document the parole decision-making process for the named Plaintiffs. Defendants concede that the only evidence of the parole decision-making process for the three named Plaintiffs, aside from their Parole Determination Worksheets, is the Declaration of Newark and Enforcement and Removal Operations Deputy Field Office Director Rueben Perez Jr.. (Transcript at 44) (ECF No. 33 at 4-17). DFOD Perez declares that each parole case "is reviewed on a case-by-case basis, and an individualized determination is made based on factors specific to

the case." (ECF No. 33, ¶ 12). The Declaration also states that, based on DFOD Perez's review of their parole review records, the named Plaintiffs "received an individualized parole review consistent with the 2009 Parole Directive." (ECF No. 33, ¶¶ 13, 26, 38). Plaintiffs have a legitimate interest in supplementing DFOD Perez's representation with the only available documentary evidence of ICE's decision making process that preceded the denial of parole to these Plaintiffs.

Moreover, Plaintiffs have already demonstrated a credible basis for exploring Defendants' potential lack of compliance with the Parole Directive through discovery. The Parole Directive mandates a parole interview within 7 days of a credible fear finding, unless more time is required. Parole Directive § 8.2. Contrary to Section 8.2, a deportation officer did not conduct a parole interview for two of the three named Plaintiffs at any point. (Transcript at 21). Plaintiff D.A. has been in ICE custody since January 27, 2018. (ECF No. 33, ¶ 14). D.A. established credible fear on February 5, 2018. (ECF No. 33, ¶ 17). D.A. was advised that a parole interview would take place on February 16, 2018. (Id. ¶ 19). Ultimately, however, "no formal interview was conducted." (Id. ¶ 22). Plaintiff S.K. has been in ICE custody since November 11, 2017. (Id. ¶ 28). On November 20, 2017, S.K. established credible fear. (Id. ¶ 30). Plaintiff received notification that his parole interview would take place on December 6, 2017. (Id. ¶ 32). However, "no formal interview was conducted." (Id. ¶ 33). In both cases, ICE maintains that an interview was not conducted because Plaintiffs submitted sufficient documentation. (Id. ¶¶ 22, 33). These inconsistencies in the implementation of the Parole Directive bolster Plaintiffs' interest in seeking discovery into whether the Parole Worksheets demonstrate compliance with the Directive.

The unredacted Parole Worksheets shall be produced on an Attorneys' Eyes Only basis, to protect the government's interests. The balancing test considers "whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage

candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Delaware River Keeper Network, 300 F.R.D. at 211 (quoting In re U.S., 321 Fed. Appx. 953, 959 (Fed. Cir. 2009)). Defendants assert that deportation officers will be "discouraged from providing candid and unfettered explanations of their thoughts and impressions, and ultimately hampered in their ability to conduct robust analyses of parole claims." (Def.'s Letter Br. at 2). The Attorneys' Eyes Only restriction will obviate the risk of a chilling effect on deportation officers' decision-making. Furthermore, deportation officers follow the publicly available guidelines in the Parole Directive, and it is difficult to imagine that they would hesitate to apply publicly known parole factors.

### B. Law Enforcement Privilege

Defendants also assert the law enforcement privilege over the unredacted Parole Worksheets. The controlling test for the applicability of the law enforcement privilege was articulated in Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D.Pa. 1973). *See* Groark v. Timek, 989 F. Supp. 2d 378, 390 (D.N.J. 2013) (naming Frankenhauser as the "seminal case identifying [the law enforcement privilege] factors"). Courts have mostly considered the law enforcement privilege in the context of confidential information maintained by police departments. *See, e.g.,* Torres v. Kuzniasz, 936 F. Supp. 1201, 1215 (D.N.J. 1996) (holding that plaintiffs were entitled to, *inter alia*, police department internal affairs records); Dawson v. Ocean Twp., No. CIV.A. 09-6274 JAP, 2011 WL 890692, at *1 (D.N.J. Mar. 14, 2011) (granting in part and denying in part plaintiff's motion to compel the production of personnel and internal affairs files in Section 1983 action); Preston v. Malcolm, No. CIV.A. 09-3714JAP, 2009 WL 4796797, at *6 (D.N.J. Dec. 8, 2009) (denying prosecutor office's motion to quash plaintiff's subpoena for documents related to an excessive force investigation). The Plaintiffs here do not seek any information related to a past,

ongoing, or potential law enforcement investigation. Therefore, the assertion of the law enforcement privilege over parole determinations for asylum applicants is inapposite.

Regardless, the law enforcement privilege analysis weighs in favor of disclosing the Worksheets on an Attorneys' Eyes Only basis. The Frankenhauser factors mirror the balance at the heart of the deliberative process analysis between Plaintiffs' need for the Worksheets and any harm to governmental processes and agency functioning from releasing them. Frankenhauser, 59 F.R.D. at 343 (E.D.P.A. 1973) ("[T]he court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-friviolous cause of action."). Like the deliberative process privilege, "the balancing test for determining whether the law enforcement privilege applies must be conducted with an eye toward disclosure." Torres, 936 F. Supp. at 1210.

Many of the Frankenhauser factors overlap with the deliberative process privilege analysis and weigh in Plaintiffs' favor. *See* 59 F.R.D. at 344 (discussing factors including "whether the information sought is factual data or evaluative summary," "whether the plaintiff's suit is non-frivolous," and "whether the information sought is available through other discovery or from other sources"). The Court has already established that the Worksheets are mostly factual in nature, that Plaintiffs' only other source for relevant discovery into the parole decision making process is DFOD Perez's declaration, and that the Worksheets are relevant to the essence of Plaintiffs' claims. *See supra* Part III.A.

Defendants claim that the release of the completed Parole Worksheets could undermine the agency's efforts to make parole determinations because the Worksheets provide a "roadmap" to how detention officers make parole decisions. (Transcript at 30). Thus, future applicants could tailor or manipulate their asylum or parole applications. (Def.'s Reply at 3) (Transcript at 28 – 40).

14

Defendants also raised a concern about revealing applicants' sponsors, because deportation officers look for suspicious patterns of recurring sponsors when making a parole decision. (Def.'s Letter Br. at 3). The Court recognizes these concerns, and for that reason, will place an Attorneys' Eyes Only restriction on the production of the Worksheets. The Attorneys' Eyes Only condition ensures that current or potential asylum applicants will not have access to the completed worksheets. Any potential harm to government interests or to the public's interest in the proper functioning of the law enforcement process is minimal. Therefore, Defendants cannot use the law enforcement privilege to shield the unredacted Parole Worksheets.

## IV. CONCLUSION

For the reasons set forth above, Defendants' letter application to withhold the production of the unredacted Privilege Worksheets is denied. An appropriate order follows.

**IT IS**, on this 28th day of June, hereby

**ORDERED** that Defendants are to provide Plaintiffs with unredacted Parole Determination Worksheets for the three named Plaintiffs, proceeding anonymously as D.A., S.K., and L.M. within three (3) business days,

**ORDERED** that Defendants shall provide the Parole Determination Worksheets on an Attorneys' Eyes Only basis.

s/ Cathy L. Waldor
**CATHY L.WALDOR**
**UNITED STATES MAGISTRATE JUDGE**